SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**MIRA CHERNICK, MASB #696845**
Mira.Chernick@usdoj.gov
**WILLIAM M. McLAREN, OSB #143836**
William.McLaren@usdoj.gov
Assistant United States Attorneys
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**UNITED STATES OF AMERICA**

**v.**

**SELVA DELANO MUDALIAR,**

**Defendant.**

**3:24-cr-00340-MO**

**GOVERNMENT'S TRIAL MEMORANDUM**

Defendant Selva Delano Mudaliar is charged by indictment with one count of sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1591(a)(1), and one count of transporting an individual to engage in prostitution, in violation of 18 U.S.C. § 2421(a). The charges arise from the defendant's conduct on December 3, 2021, during which he transported an adult victim from Oregon to a hotel in Vancouver, Washington, where he tried to negotiate with a potential prostitution customer for a commercial sex act. When the commercial sex act did not take place, defendant used violence, first in Washington and later in Oregon, in an attempt to coerce her compliance.

The pretrial conference is set for Thursday, October 21, 2026, and trial is set to begin on Monday, November 2, 2026. Trial is scheduled for five days.

## FACTUAL BACKGROUND

The factual background, as informed by the state and federal investigations as well as the recollection of the victim in this matter, is laid out below.

### A. Defendant and Adult Victim 1

Defendant Selva Mudaliar and Adult Victim 1 ("AV1")[1] met on a dating application and were in a casual dating relationship for several months in Fall 2021. During the brief time they were getting to know each other, defendant told AV1 that he was recently released from prison and had been arrested for promoting prostitution in the past, but he explained that away as false allegations and lies.

### B. Events of December 3, 2021

On December 3, 2021, defendant and AV1 went to dinner and then to a nightclub in Portland, Oregon, where they met an adult male who was interested in purchasing drugs from defendant.[2] When the man went to an ATM to withdraw cash to purchase the drugs, defendant saw that man's account balance was over $50,000. Upon seeing the account balance, defendant became excited and instructed AV1 to introduce herself to him.

---

[1] The government anticipates AV1's name will be used during trial but will continue to take efforts to anonymize her in pretrial filings in order to maintain her anonymity in public documents to the extent possible.

[2] The government does not intend to introduce evidence of defendant's drug dealing or use. However, the defense could make such evidence relevant to put events in their proper context. In that case, the government would revisit the admissibility of this evidence.

At defendant's instruction, AV1 introduced herself to the man. In the early morning hours of December 3, 2021, defendant, AV1, and the man from the nightclub drove in defendant's car to the man's hotel in Vancouver, Washington. When they arrived at the hotel, they entered the man's room, whereupon the man and defendant began openly negotiating commercial sexual activity with AV1. Defendant told the man that AV1 was "his girl" and represented himself as her pimp. He offered her to the man for the whole week, and when the man agreed, defendant named the price as $1,500. Defendant and the man discussed the fact that this price included everything, specifically sexual intercourse with AV1.

As AV1 would later report to law enforcement, as the negotiations continued, defendant began to speak and act aggressively towards her, and both AV1 and the potential customer became concerned that defendant was going to beat her. The man told defendant to leave the room, and defendant left to wait in the car.

AV1 reported that the potential customer did not want to proceed with the deal because of defendant's aggression, but did not want AV1 to be beaten as a result. AV1 recalled that the man gave her an endorsed blank check to appease defendant and prevent him from getting violent, and that he planned to cancel the check the following day.

**C. Consequences of AV1's Failure to Comply**

When AV1 returned to defendant's car and offered him the check, defendant became enraged, shouting "You were supposed to fuck him all week you were supposed to fuck him and give me fucking cash." AV1 explained that, as he drove them back from Washington to Oregon, defendant began to beat her while he continued to yell that she was supposed to "fuck" the customer and bring defendant "fucking cash."

After the initial beating in the car, defendant took AV1 to his apartment in Tigard, Oregon, where he beat her again. AV1 reported that defendant hit her head against hard surfaces, strangled her with one hand while shoving the thumb of his other hand down her throat, and punched her repeatedly. Following the violence, AV1 fled defendant's apartment and called 911. She reported that defendant had beaten her, exclaiming, "I just got the hell beat out of me by a guy," whom she subsequently identified as defendant. During AV1's initial contact with law enforcement shortly after the beating, AV1 twice reported that defendant had recently been released from prison for assaulting and trafficking women. During that same interview, AV1 also told law enforcement that defendant was "a pimp." She allowed law enforcement to photograph her injuries. She showed the responding officers a photograph of defendant. She did not initially report to the emergency dispatcher or law enforcement the earlier events of the night or the failed commercial sex transaction.

Additionally, on the night of the assault, officers separately conducted a traffic stop of defendant and observed and photographed a laceration and puncture wound on his thumb, consistent with AV1 biting defendant while he was strangling her.

AV1 was seen by medical professionals at Kaiser Permanente Westside Medical Center and the Oregon Health & Science University. A nurse administered a strangulation kit and doctors observed and treated her extensive injuries. They observed injuries consistent with strangulation and made an initial diagnosis of a broken hyoid bone. Whether AV1's hyoid bone was actually broken during the strangulation was later brought into question upon further examination by additional medical providers. Regardless, she suffered extensive injuries as documented by medical records and photographs on both December 3 and 4, 2021.

Two weeks later, AV1 notified a state prosecutor that the failed sex trafficking transaction on December 3, 2021, was the reason for the beating she suffered at defendant's hands. The prosecutor endeavored to connect AV1 with a detective who would interview AV1 about the details. Over the next several months, in part due to the aftereffects of the traumatic events of December 3, 2021, AV1 was unable to connect with the detective. In mid-April 2022, a detective interviewed AV1, who explained the details of the trip to Washington and the failed sex trafficking transaction.

**D. Flight from State Prosecution, Extradition, and Defendant's Statements**

On December 6, 2021, defendant was charged in Washington County, Oregon, with Assault in the Second Degree (2 counts), Strangulation (1 count), Kidnapping in the First Degree (4 counts), Coercion (1 count), Unlawful Use of a Weapon (1 count), Assault in the Fourth Degree (2 counts).

In February 2024, defendant failed to appear at a pretrial conference scheduled shortly before his trial. A warrant was issued for his arrest. A state and federal investigation into defendant's whereabouts later revealed he purchased a one-way ticket to Bangkok, Thailand. He was located by authorities, extradited from Thailand, and charged with the interstate sex trafficking offenses underlying this case.

Following defendant's extradition and during the pendency of the state and federal trials, he made statements in the form of letters and *pro se* filings to the Washington County Court and the Washington County District Attorney's Office. He characterized the events of December 3, 2021, in an apparent attempt to explain himself and undercut AV1's statements. In those admissions, defendant corroborated AV1's recollection of the trip to Vancouver, Washington, by

providing Google location data confirming that he was in the vicinity of a Vancouver Quality Inn between approximately 2:48–3:17 a.m. in the morning hours of December 3, 2021.

## ELEMENTS OF THE OFFENSES

To prove Sex Trafficking by Force, Fraud, or Coercion, in violation of 18 U.S.C. § 1591(a)(1), as alleged in Count 1, the government must prove the following elements beyond a reasonable doubt: (1) on or about December 3, 2021, in the District of Oregon and elsewhere, the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited Adult Victim 1; (2) the defendant knew or recklessly disregarded the fact that force, threats of force, fraud, coercion, or any combination would be used to cause AV1 to engage in a commercial sex act;[3] and (3) the defendant's acts were in or affecting interstate or foreign commerce. Regarding the first element, "the listed alternatives—'means of force, threats of force, fraud, coercion … or any combination of such means'—are not elements but rather possible means to commit the crime of human trafficking." *United States v. Mickey*, 897 F.3d 1173, 1181 (9th Cir. 2018) (alteration in original) (emphases omitted).

To prove Transporting an Individual to Engage in Prostitution, in violation of 18 U.S.C. § 2421(a), as alleged in Count 2, the government must prove the following elements beyond a reasonable doubt: (1) on or about December 3, 2021, in the District of Oregon and elsewhere, the defendant knowingly transported Adult Victim 1 in interstate commerce; and (2) the defendant

---

[3] The statutory definition of "coercion" includes threats of serious harm to or physical restraint against any person; any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or the abuse or threatened abuse of law or the legal process. 18 U.S.C. § 1591(e)(2). "Commercial sex act" is defined as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3).

transported AV1 with the intent that she engage in prostitution. With respect to the intent element of § 2421(a), it is "sufficient if the government proves beyond a reasonable doubt that the sexual activity was a significant, dominating or motivating purpose." *United States v. Flucas*, 22 F.4th 1149, 1154–55, 1164 (9th Cir. 2022); *see also United States v. Pepe*, 81 F.4th 961, 977 (9th Cir. 2023) ("Ninth Circuit precedent clearly establishes that a defendant can have mixed motives for traveling.").

## ANTICIPATED DEFENSES

At the time of this writing, defendant has not identified any affirmative defenses he intends to raise at trial. The government lists anticipated potential defenses below and reserves the right to respond and to challenge any defenses that defendant identifies in trial documents.

### A. Attacks on the Victim's Character and Credibility

The government anticipates that one primary defense will be to attack AV1's character for truthfulness and attempt to undercut her veracity in order to call into question the events of December 3, 2021.

This may include attempts to use statements by individuals who knew AV1 from prior personal interactions. This line of impeachment is the subject of a separate motion in limine and the government relies on the facts and law provided in that filing.

The government anticipates some permissible impeachment but respectfully requests that the Court disallow impermissible attacks on AV1, which may include attempts to use extrinsic evidence, testimony referencing character evidence unrelated to truthfulness, or lines of cross-examination referencing mental and emotional struggles following the severe beatings AV1 suffered on December 3, 2021.

Additionally, should defense attack AV1's credibility to a substantial degree using her mental health struggles or some other avenue of attack, the government will seek to rehabilitate AV1's testimony by referring to multiple past instances of consistent statements. *See* Fed. R. Evid. 801(d)(1)(B)(ii); *see also United States v. Begay*, 116 F.4th 795, 798–802 (8th Cir. 2024) (determining that prior consistent statements were properly admitted under Rule 801(d)(1)(B)(ii) to rehabilitate victim-witness whose credibility was attacked based on her "past drug use and her mental-health struggles"). *See, e.g.*, *United States v. Portillo*, 969 F.3d 144, 175 (5th Cir. 2020) (recognizing that prior consistent statement may be properly admitted under Rule 801(d)(1)(B)(ii) where witness is attacked on a ground other than "recent fabrication" of a story or "act[ing] from a recent improper influence or motive," which are governed by Rule 801(d)(1)(B)(i)); *United States v. Cox*, 871 F.3d 479, 487–88 (6th Cir. 2017) (concluding that the district court properly admitted a prior consistent statement for rehabilitation purposes under Rule 801(d)(1)(B)(ii) where defense had challenged witness's "purportedly faulty memory"); *Portillo*, 969 F.3d at 176 (same); *Begay*, 116 F.4th at 801–02 (same).

While AV1 did not immediately discuss the sex trafficking events that preceded the beating defendant visited upon her, she did refer twice to defendant being a pimp who had recently been in prison for trafficking women. Less than two weeks later, she emailed authorities to disclose that sex trafficking was the motive for the assault and provided additional details about the events of that night. In a December 16, 2021, email to a Deputy District Attorney, she explained her reasoning—"I was too scared and embarrassed to say"—and described the details of defendant's attempts to sex traffic her. Once authorities arranged a follow-up meeting with AV1, a detective took her statement and created a report. While defendant's trial strategy is yet unknown, the government seeks to reserve the option to call the

detective who took AV1's statement and elicit the specifics. Moreover, should circumstances support it, the government may wish to offer AV1's email in which she came forward to explain how defendant "tried to make [her] have sex for money that night."

Should the government be permitted to admit AV1's statements, the government recognizes that they should be accompanied by a limiting instruction that the statements be considered only for this rehabilitative purpose. *Compare United States v. Miller*, 874 F.2d 1255, 1273 (9th Cir. 1989), *with United States v. Collicott*, 92 F.3d 973, 979–80 (9th Cir. 1996) (collecting cases); Vol. 30B C. Wright & A. Miller, Federal Practice and Procedure § 6574 (Westlaw Apr. 2026) (recognizing as the now-uniform approach that, after a witness's credibility is attacked, "prior consistent statements can be offered to rehabilitate a witness" under Rule 801(d)(1)(B)(ii) with such a limiting instruction).

**B. Assault Not Motivated by Sex Trafficking**

Another defense may be to isolate the violent assault on AV1 as an instance of pure domestic violence or otherwise unrelated to sex trafficking. Because AV1 refused to comply with defendant's attempt to traffic her in Vancouver, Washington, defendant may rely on the lack of the completed transaction, the unknown identity of the potential customer, and the lack of actual payment to argue that there was no attempted sex trafficking.

At the outset, a sex act need not have occurred in order for the sex trafficking offenses charged in Counts 1 and 2 to be viable. "Case law makes clear that 'commission of a sex act or sexual contact' is not an element of a conviction under 18 U.S.C. § 1591." *United States v. Hornbuckle,* 784 F.3d 549, 553 (9th Cir. 2015). But the likelihood that the violence defendant perpetrated against AV1 will be explained away in this fashion increases the relevance of defendant's prior acts as they bear on plan, intent, knowledge, and motive, as detailed in the

government's separate motion in limine under 404(b). "What the statute requires is that the defendant know in the sense of being aware of an established modus operandi that will in the future coerce a prostitute to engage in prostitution." *United States v. Brooks,* 610 F.3d 1186, 1197 n.4 (9th Cir. 2010) (internal quotation marks omitted).

Additionally, AV1's statements to law enforcement and recollection of the events of December 3, 2021, leading up to the beatings she suffered are that much more relevant should this line of defense be pursued.

**OUTSTANDING PRETRIAL ISSUES**

One primary pretrial issue concerns the government's intended elicitation of evidence and testimony related to defendant's prior similar conduct pursuant to Fed. R. Evid. 404(b). Specifically, defendant has engaged in commercial sex trafficking of two prior victims and employed similar tactics of using force, fraud, or coercion to cause those victims to engage in sexual acts for money. The government intends to call one of these prior victims and elicit limited testimony for the purpose of proving motive (this is defendant's way of making money), plan (taking women to places to sell them to customers for sex and using violence if the women do not comply), intent (when engaging in violence against women, his intent is for them to comply with his expectations as their pimp), and knowledge (defendant's awareness that victims may resist being trafficked for sex and that using violence can both overcome and punish that resistance).

The government is separately filing a notice and motion to admit this evidence and the government relies on the facts and law provided in that filing.

/ / /

## OTHER EVIDENTIARY ISSUES

### A. Defendant's Statements Made During the Pendency of Trial

During the pendency of the state case against defendant, he made various *pro se* filings attempting to defend and explain his actions on the night of December 3, 2021. Specifically, he filed an exhibit outlining his Google location information that night and added notes and shapes to printed pages he offered in an ostensible attempt to vindicate himself. The government will offer one such item given that it places the defendant in Vancouver, Washington in the early morning hours of December 3, 2021, which is consistent with AV1's statements about the interstate trip. So, too, did defendant represent having been at a Quality Inn in Vancouver, Washington, which is consistent with AV1's recollection of the possible hotel she was taken to by defendant that night.

As further detailed in the government's motions in limine, a defendant's inculpatory statements, when offered by the government, are admissible statements of a party opponent. *See* Fed. R. Evid. 801(d)(2). This rule does not apply to evidence offered by defendant because he would be offering it for himself, not against a party opponent. A defendant's exculpatory statements—or any statements—are inadmissible hearsay, even if made contemporaneously with other self-inculpatory statements. *United States*, 512 U.S. 594, 599 (1994); *see also United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000).

### B. Expert Testimony

The government plans to call two experts, FBI Task Force Officer Yonsoo Lee and Oregon State Police DNA Forensic Scientist Sean Michaels. Curriculum vitae for TFO Lee and Mr. Michaels have been provided to the defense, and reports produced by both Mr. Michaels and Ms. Delehant have long been produced in this matter. Mr. Michaels can testify as to all relevant

testing in the OSP forensics laboratory, as well as provide necessary chain of custody. Defendant has stipulated that he may do so, irrespective of hearsay objections.

In compliance with Federal Rule of Criminal Procedure Rule 16, the government has filed an expert witness disclosure for Mr. Lee. His testimony is being challenged by defendant. The government filed an expert witness disclosure for Mr. Michaels on the date of this writing, concomitantly with its other trial documents.

**THE TRIAL**

The government has identified approximately 19 potential witnesses. This is a list erring on the side of inclusion, but the government will work to pare this down to avoid calling witnesses with substantially similar testimony. Additionally, the government will coordinate with counsel for defendant to determine if the testimony of any chain of custody witnesses or records custodians can be eliminated by way of stipulation.

The government anticipates calling AV1 to testify as to her recollection of the night of December 3, 2021. The government will call law enforcement witnesses from the FBI, the Tigard Police Department, medical professionals who examined AV1, and a DNA analyst who will testify to the presence of defendant's DNA on AV1's neck.

The government anticipates introducing approximately 20–25 exhibits. The main categories of evidence include (1) photographs from the night of December 3, 2021, and follow-up photographs from the next day; (2) medical records related to AV1's diagnoses and treatment; (3) a recording of AV1's 911 call; (4) defendant's statements and admissions to the state prosecutor and court; and (5) body worn camera (BWC) footage capturing the responding officers' interactions with AV1 and defendant. The government intends to list several relevant bodycam videos in its exhibit list which will be filed concurrently with this memorandum. The

videos are lengthy and include some inadmissible statements by both Adult Victim 1 and the defendant. In the interest of efficiency, the government will clip relevant portions of the videos for presentation at trial. Once the videos are clipped and subdivided, the government will amend its exhibit list accordingly.

**CONCLUSION**

The government is prepared to proceed to trial on November 2, 2026.

Dated: October 9, 2026.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Mira Chernick*
**MIRA CHERNICK, MASB #696845**

*/s/ William M. McLaren*
**WILLIAM M. McLAREN, OSB #143836**
Assistant United States Attorneys